DOLORES DÍAZ TORRES, Plaintiff and Appellant, *v.* ISMAEL RIVERA, Defendant and Appellee.

No. R-66-375.     Decided October 9, 1968.

*Harry B. Llenza* for appellant. *Víctor A. Coll* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RIGAU delivered the opinion of the Court.

In 1942 plaintiff-appellant, Dolores Díaz, inherited from her father an urban property located in José de Diego Street

in Río Piedras. Her sister, María del Rosario Díaz, inherited, on the same date and from the same deceased, a property contiguous to that of Dolores. Subsequently, Ismael Rivera, defendant-appellee, purchased the property belonging to María del Rosario and after some time he tore down the house which existed there, to construct a building of several stories.

Along the lot purchased by Ismael Rivera ran a pipe for the sewage discharge of both houses—the one purchased and torn-down by Rivera and plaintiff's house. Said pipe had been installed there for the purposes aforementioned by the father of the Díaz sisters, from whom, as we have said, the latter inherited their respective properties.

On February 8, 1962, plaintiff, Dolores Díaz, filed in the Superior Court, San Juan Part, an action for the establishment of an easement and damages, against Ismael Rivera, in the first cause of action of which she set forth, in addition to the foregoing, the following:

"That said properties belonged to her father, Pedro Díaz Correa, who built the houses and established a servitude of aqueduct in which the servient tenement was the lot where house number 104 is located, where there existed, as an apparent sign of said servitude, part of the visible pipeline which has been in use for more than 20 years.

"At present, defendant Ismael Rivera purchased the servient tenement and he plans to construct thereon a building which will necessarily obstruct the free enjoyment of the right of servitude which plaintiff's property has, her property being the dominant tenement, and defendant's property the servient tenement."

In the second cause of action of said complaint, plaintiff stated that the defendant had broken the aforementioned pipeline; that this caused her inconveniences with the tenants and neighbors of the property and with the Department of Health; that she has incurred expenses; that she had been deprived by the defendant of the use and enjoyment of her right; wherefore, she claimed damages for $5,000. She also

requested the court to declare her right to use and enjoy the servitude to which we have referred.

On June 18, 1962 a motion for Dismissal by Stipulation signed by counsel of both parties and by the defendant, personally, was filed in the court, wherein the following was stated:

"Plaintiff in this case requests this court to consider the above-entitled action as abandoned because she had agreed with the defendant that the latter would pay the expenses incurred in providing plaintiff the proper water discharge connected *directly to the public sewer system* along plaintiff's lot, thereby eliminating the servitude which may exist on his property, as prescribed by the Regulations of the Department of Health.

"Plaintiff shall take care of the payment of the permits necessary to carry out these works and the defendant will perform the works." (Italics ours.)

The court granted the request and ordered the dismissal of the case.

Plaintiff's property is on a corner and, therefore, is bounded on one side by José de Diego Street and on the other by Barbosa Avenue. Ismael Rivera ordered his engineer to connect the sewage discharge of plaintiff's property with the sewer system of De Diego Street. Upon making the works, the engineer found that between plaintiff's property and the sewer system of said street there existed buried at a depth of one foot from the surface a concrete box, two feet wide by two feet high, and which runs along all the side of plaintiff's lot, which is bounded by De Diego Street. Said box contains telephone cables. Upon finding said obstacle, the defendant decided to connect the drainage pipe of plaintiff's property to the pipe installed to serve his own building located in the contiguous lot.

Since the sewerage pipe of plaintiff's property was connected with that of Ismael Rivera's property, on repeated occasions the sewage has overflowed the toilets and other

sanitary installations of plaintiff's house and those of her tenants, causing plaintiff expenses and the worry and troubles which are inevitably involved in those situations. Before that situation, Dolores Díaz filed again in the Superior Court, San Juan Part, a complaint requesting the court to order Ismael Rivera to connect the sewage discharge directly to the public sewer system, as agreed upon by the stipulation in the former case, and requesting further $5,000 for damages and an amount for attorney's fees.

After the case was heard, the trial court dismissed the complaint, despite concluding in its findings of fact as follows:

"Consequently [after defendant having connected the drainage pipe of plaintiff's property to the pipeline of another building] the drainage pipes of both properties discharge on the same inlet which, on occasions, produces stagnation and the corresponding overflow of sewage on plaintiff's property, since the discharge of waters of defendant's building is greater than that of plaintiff's building."

And the trial court concluded also that:

"As a direct consequence of the aforesaid installation, plaintiff suffered on ten or twelve different occasions, within a period of two years, the problem of the stagnation of sewage, causing the overflow of the toilets of her three tenants and her own, with the accompanying pestilence and the resulting annoyances and inconveniences. She had to employ plumbers for discharging the pipelines with expenses amounting to $165. Such discharges constitute a temporary but not final solution of the problem."

The trial court reasoned that the defendant should not be liable for the damages resulting from a fact which he could not foresee; that the defendant tried to comply with his promise; and that he furnished a sewerage to plaintiff, "although imperfect." It refused to order defendant to connect the sewerage to the sewer system of Barbosa Avenue, and denied damages.

We issued the writ. Appellant alleges that the court erred (1) in releasing defendant from liability, despite having

concluded that he did not comply fully with the agreement in the stipulation; (2) that it erred in not making any determination with respect to the connection of the sewerage to the sewer system of Barbosa Avenue; and (3) that it erred in dismissing the complaint, notwithstanding that defendant did not comply with the stipulation.

We must see whether the defendant bound himself and to what; whether he fulfilled his obligation or whether he had a valid excuse for not fulfilling it; and whether, in failing to do so, he incurred civil liability. In the course of this opinion these questions are answered.

■ To put an end to the action for the establishment of an easement and damages instituted against him, the defendant agreed to accept the stipulation terminating the original suit. Said stipulation constitutes a contract of compromise which bound the parties. Civil Code, § 1709, 31 L.P.R.A. § 4821; *Canino* v. *Bellaflores*, 78 P.R.R. 739 (1955). By said contract the defendant, Ismael Rivera, was bound "to provide plaintiff the proper sewerage connected directly to the public sewer system along plaintiff's lot, eliminating thereby the servitude . . . etc." From the facts previously set forth, it appears that the defendant did not perform his obligation, for he did not provide the sewerage connected directly to the public sewer system along plaintiff's lot, nor along any other, but he connected the drainage pipe which should have been connected to the sewer system, to the drainage pipe of another building.

■ It is fitting to ask whether the fact that the sewerage which should have been connected to the public sewer system was connected to the pipeline of another building, has any consequence for the decision of this case. From the facts afore-stated, it appears that that fact is in effect significant for the purposes of determining whether or not the defendant performed his obligation. The importance of that

fact lies in that the connection with the other pipeline—not authorized nor foreseen in the stipulation—was ineffective and inadequate. In other words, the purpose or consideration of the contract of compromise from plaintiff's point of view, which was to have a sewerage which would function correctly and properly, was not accomplished. Not only did the defendant fail to perform his obligation from a strict point of view—for he did not provide the sewerage *directly* connected to the sewer system along plaintiff's lot—but he also failed to perform it substantially, since the sewerage he provided does not operate satisfactorily.

Probably, the drainage pipe of defendant's building, to which he connected the other which should have been connected to the sewer system, was not designed or calculated to receive additional discharges, but for whatever reason there may be, what is controlling is that said connection did not function correctly, defendant's obligation being nonperformed.

The first three questions which we formerly indicated having been answered, we must now determine whether the defendant had any valid excuse for the nonperformance of his obligation. As it is known, the law provides that in obligations to do, the debtor shall be released when the prestation appears to be physically impossible. Civil Code § 1138; 31 L.P.R.A. § 3193.

The defendant cannot avail himself of the aforecited provision. The resources of modern engineering are not so poor as to be *impossible* to overcome the obstacle of a concrete box, two feet high by two feet wide, found in the path of a pipeline, but assuming that it is, the defendant, in order to substantially perform his obligation—which was to provide a sewage discharge *directly* connected to the public sewer system—could have connected said drainage with the sewer of Barbosa Avenue, the other street which bounds plaintiff's lot. A sewerage thus connected, which would work properly, would probably constitute—if it did not injure other plain-

tiff's rights—the performance of the obligation agreed upon by the defendant, since it does not appear to be an important element of the stipulation to which of the two streets would the sewerage be connected. Probably, that detail was not specified in the stipulation for that reason. However, it was specified that the connection would be made directly to the public sewer system. It is easy to understand that this last element was an important one of the stipulation, since it is contrary to law and to the public policy, not to connect the sewage discharge to the public sewer in the streets where there is such sewer system, except in special circumstances prescribed by law. 22 L.P.R.A. § 159; 24 R.&R.P.R. § 350–1755.[1]

We must decide now whether or not the defendant incurred civil liability in not performing the obligation he contracted in the stipulation.

As we saw, from the foregoing statement of facts it appears that defendant's nonperformance caused damages to plaintiff. The repeated overflow of sewage in her house and in those of her tenants caused considerable annoyances and inconveniences, and expenses also. Moreover, defendant's action in destroying the sewerage which plaintiff's property originally had, compelled her to litigate twice, and as it is known, suits entail expenses and inconveniences to the litigants.

Defendant invokes § 1058 of the Civil Code, 31 L.P.R.A. § 3022, which provides that no one shall be liable for events "which could not be foreseen, or which having been foreseen, were inevitable." We do not agree with his position. The facts of this case show that an extremely simple work was involved and we must conclude that defendant—acting

---

[1] Considering this, if it were altogether impossible to connect the sewerage of plaintiff's property to the public sewer by any of the two streets bounding the lot, then, in all probability, it would be necessary to revert to the situation *ante litem*, this is, to that of the servitude, for plaintiff's lot *had* access to the public sewer by means of that servitude.

through his own engineer—should have foreseen that the discharge pipe of his building was not designed to receive additional discharges of other buildings. This state of fact is governed by § 1060 of the Civil Code, 31 L.P.R.A. § 3024, which provides that the debtor is liable for damages "foreseen or which may have been foreseen," and which may be a necessary consequence "of his nonfulfilment." Defendant's nonfulfilment together with his not-so-prudent action of carrying out the wrong connection of the pipes, produced, as a direct consequence, the damages suffered by plaintiff. We have already said that the same could have been foreseen if the care and diligence required by the works had been exercised.[2]

In her complaint plaintiff requests the court to order defendant to construct the sewerage directly connected to the public sewer; $5,000 for damages; costs and attorney's fees. In obligations to do, as that of the instant case, § 1051 of the Civil Code, 31 L.P.R.A. § 3015, is applicable. Said section provides the following:

"If the person obliged to do something should not do it, it shall be ordered to be done at his expense.

"This shall also be done should he act in contravention of the tenor of the obligation. Whatever has been badly done may also be ordered to be undone."

On the foregoing, see Castán, *op. cit.* at p. 186; Puig Brutau, *op. cit.* at p. 453.

It is also true that when, as a result of the nonperformance of contractual obligations, damages are caused and their existence and direct relation with the nonperformance are proved, compensation may be recovered. In one of the provisions concerning the consequences of nonperformance of obligations, the Civil Code provides in its § 1077, 31 L.P.R.A.

---

[2] See *Cabinero* v. *Cobián Theatres*, 81 P.R.R. 926, 943 (1960); 3 Castán, *Derecho Civil Español, Común y Foral* 175, 10th ed. (1967); Puig Brutau, I-2 *Fundamentos de Derecho Civil* 440 (1959).

§ 3052, that "The person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, *with indemnity for damages and payment of interest in either case.*" (Italics ours.) *Pérez* v. *Sampedro*, 86 P.R.R. 498, 502 (1962); *Rutledge* v. *Gill*, 78 P.R.R. 665, 679 (1955); *Camacho* v. *Catholic Church*, 72 P.R.R. 332, 341 (1951), and authorities cited therein; I-2 Puig Brutau, *Fundamentos de Derecho Civil* 157–158 and 447–466 (1959); 8-1 Manresa, *Código Civil Español* 120 (1950); 19 Scaevola, *Código Civil* 607 (1957). In *Camacho* v. *Catholic Church, supra,* we said:

"In this case there was, as we have said, a breach of contract on the part of the defendant. . . . In a contract . . . as the one involved herein, the damages claimed by plaintiffs for the sufferings and mental anguish could have been foreseen by the defendant and are clearly a necessary consequence of the breach of contract." (Citations omitted.)

It is easy to see the justice of the provisions of the aforecited § 1077. If damages are recovered for the implicit general obligation recognized in § 1802, that every person has to act with due care in order not to injure the person and rights of others, there is a like or greater reason to recover damages actually caused when a specific obligation, expressly and consciously assumed, is unfulfilled without justification. Thus, for example, the Civil Code itself, in its § 1054 expressly provides that the damages caused by those who, in fulfilling their obligations are guilty of negligence, are subject to compensation. 31 L.P.R.A. § 3018.[3]

For the reasons stated in this opinion, the judgment of the Superior Court, San Juan Part, rendered in this case on October 28, 1966, will be reversed and another rendered sustaining the complaint; ordering defendant to connect the sew-

---

[3] For a discussion of the implied obligation to act with due care so as not to impose injury upon others, see V Pound, Jurisprudence 283–346, and by the same author, Chapter 4 of Introduction to the Philosophy of Law 86 (1954 rev. ed.).

erage of plaintiff's property directly to the public sewer, or in default thereof, to authorize plaintiff to carry out said works at defendant's expense; and ordering defendant to pay the amount of $3,000 to plaintiff for damages.